## FAUST v. STATE.

Division A. Nov. 5, 1951.

No. 38107 (54 So. (2d) 724)

**Lowrey & Stratton**, for appellant.

**Geo. H. Ethridge**, Assistant Attorney General, for appellee.

**Kyle, J.**

The appellant was indicted, tried and convicted in the Circuit Court of Amite County on a charge of manslaughter for the killing of James ("Shorty") Martin, and was sentenced to serve a term of six years in the state penitentiary. The indictment charged that the appellant "did unlawfully and feloniously kill and slay" the deceased "by culpable negligence."

The deceased was killed in an automobile wreck which occurred on State Highway No. 24 about three and one-half miles east of Gloster between 4:30 and 5:00 o'clock

on Sunday morning, March 19, 1950. The culpable negligence upon which the manslaughter charge was based related to the manner in which the appellant was alleged to have been operating the automobile in which the deceased was riding at the time the wreck occurred.

The automobile in which the deceased was riding at the time of the fatal accident was owned by the appellant, and, according to the testimony of the State's witnesses, was being driven by the appellant. Two other Negroes were in the automobile with the appellant and the deceased at the time of the accident, namely, Minnie Lee Martin, who was the wife of the deceased, and Willie Walker, who was Minnie Lee's brother.

The appellant's attorneys, in their brief, argue three points as grounds for reversal of the judgment of the lower court on this appeal. The three points are as follows: (1) That the State failed to prove beyond a reasonable doubt that the appellant was the driver of the automobile at the time of the wreck; (2) that, regardless of who was driving the automobile, the State made out a case of simple negligence only; and (3) that the court erred in giving Instruction No. 2 for the State.

"The gist of the offense of involuntary manslaughter with a motor vehicle", as stated by this Court in Smith v. State, 197 Miss. 802, 20 So. (2d) 701, 704, 161 A. L. R. 1, "is criminal negligence, which must be wanton or reckless under circumstances implying danger to human life. * * * It must be negligence so wanton or reckless as to be incompatible with a proper regard for human life. * * * In other words, culpable negligence should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the willful creation of an unreasonable risk thereof."

In passing upon the first two points argued by appellant's attorneys on this appeal, it is necessary that we give a brief summary of the testimony of the witnesses who testified in the trial of the case.

According to the testimony of Willie Walker, who testified as a witness for the State, the appellant and Willie Walker left Gloster in the appellant's automobile sometime before midnight and drove to Centreville, where they purchased and drank several bottles of beer. They then left Centreville and drove to Crosby, where the appellant purchased a pint of whiskey and a half pint of gin; the appellant drank half of the pint of whiskey. They then drove back to Gloster, where they picked up James Martin, and then drove to James Martin's house and picked up his wife, Minnie Lee. After driving at random over several miles of rural roads, the appellant turned into Highway No. 24 and had proceeded westwardly about one mile toward Gloster when the wreck occurred. The appellant was driving the automobile at a high rate of speed. Minnie Lee Martin, according to Willie Walker's testimony, became alarmed and "screamed and hollered" to the driver to stop and let her out. The appellant did not stop, but continued to drive at a high rate of speed down the highway, "zigzagging across the road," until he met and sideswiped another automobile which was proceeding eastwardly along the highway. The appellant then lost control of the automobile in which he and the other three passengers were riding; the automobile left the highway and plunged into the road ditch and against a pine tree. James Martin was killed in the accident. Willie Walker had a leg broken and an eye knocked out. The wreck occurred about 4:30 o'clock in the morning. According to the testimony of Willie Walker and Minnie Lee Martin, at the time the wreck occurred appellant was driving the automobile; Willie Walker was seated on the front seat to the right of the driver; Minnie Lee Martin was seated on the back seat behind the driver; and James Martin was seated on the back seat to the right of Minnie Lee. The automobile was being driven at a rate of speed of 75 or 80 miles an hour, when it passed the other car going eastwardly, and the left wheels of appellant's

automobile were over the center line of the highway. The cars sideswiped each other on the south side of the center line of the highway.

Willie Walker's testimony concerning the wreck itself was corroborated by the testimony of Minnie Lee Martin, who testified that the appellant was driving the car; that he had been drinking, but was not drunk; that the appellant was driving at a rate of speed of 75 or 80 miles an hour; that immediately before the wreck occurred she "went to hollering to let me out", and "he didn't stop"; that at the time the appellant passed the other automobile, the appellant's automobile was zigzagging over the center line of the highway.

James B. Carruth, a member of the State Highway Safety Patrol, testified that he arrived at the scene of the accident about one hour after the accident had occurred; that he talked first to the appellant, who seemed to be semi-paralyzed and said he couldn't move, but was apparently rational; that he asked the appellant who was driving, and the appellant stated that he was driving. The witness then talked to Willie Walker and Minnie Lee Martin. Minnie Lee was sitting on the ground with her back to the highway and was bleeding. Willie Walker was lying down. James ("Shorty") Martin was dead. The witness was able to tell from the appearance of marks on the pavement where the sideswipe occurred. The witness testified that the appellant's automobile appeared to have been about 18 inches over the center line of the highway at the point where the sideswipe occurred; that the distance from that point to the point where the appellant's automobile hit the pine tree was 205 feet; that when the automobile hit the tree it was going in a southwesterly direction, but after hitting the tree it appeared that the automobile had turned around and headed back to the highway 15 feet from the tree; that the body of the deceased was lying about 20 feet from the automobile.

The appellant introduced four witnesses who testified that they had gone to the scene of the wreck immediately after the accident occurred. Three of these witnesses testified that when they reached the scene of the accident the appellant was lying on the right-hand side of the automobile about three or four feet back from the automobile; that Willie Walker was lying on the left-hand side of the automobile. The appellant testified in his own behalf and stated that he had taken Willie Walker to Centreville during the night before the accident; that Willie then wanted the witness to take him to Crosby, and said that he would take care of the expenses; that Willie Walker drove the car to Crosby, and when the party left Crosby Willie Walker was driving; that the witness went to sleep after they left Crosby; and that witness could recall nothing that happened thereafter until Monday morning when he realized that he was in a hospital. The witness did not recall any conversation he had with Mr. Carruth, the highway patrolman, after the accident. The witness testified that when he went to sleep in the automobile the only occupants of the automobile were the witness and Willie Walker; that "Shorty" Martin was not in the car at that time.

We think that the testimony of the State's witnesses was sufficient to prove beyond a reasonable doubt that the appellant was the driver of the car at the time of the wreck. Willie Walker and Mattie Lee Martin were passengers in the car at the time of the wreck, and both witnesses testified that the appellant was the driver of the car at the time of the wreck. James B. Carruth, the state highway patrolman, who arrived at the scene of the accident about one hour after the wreck had occurred, and who interviewed the witnesses before they had been removed from the scene of the accident, testified that the appellant himself stated that he was driving the automobile at the time of the accident. It is true that the appellant, testifying in his own behalf, denied that he

was driving the automobile at the time of the accident, and the testimony of the defendant's witnesses showed that after the wreck had occurred the appellant was found on the ground on the right-hand side of the automobile, about three or four feet back from the automobile. But the appellant's testimony denying that he was driving the automobile at the time of the accident was discredited by his own statement, made immediately after the accident to the highway patrolman, that he was driving the automobile at the time of the accident. The weight to be given to the appellant's testimony and the inferences to be drawn from the testimony of the other witnesses as to the location of the bodies of the injured occupants of the automobile who had been thrown from the automobile when it left the highway and crashed into the pine tree, were matters for the jury to decide. The jury by its verdict found that the appellant was driving the automobile at the time of the accident, as testified by the State's witnesses; and the testimony of the State's witnesses was sufficient to justify the finding of the jury that the appellant was the driver of the automobile.

We think that the testimony of the State's witnesses was also sufficient to make out a case of culpable negligence, as defined in the case of Smith v. State, supra, that is to say, negligence so gross as to evince on the part of the appellant a wanton and reckless disregard for the safety of human life, or such indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfullness.

The last contention made by the appellant is that the court erred in granting Instruction No. 2 to the State; and complaint is made that the instruction left the jury no choice except to assume that they were to recognize the appellant as the driver of the car, or, in the alternative, if appellant was not driving, that his ownership of the car was enough to make him guilty. We do not think that the instruction is susceptible of such interpretation, or that the reference to the appellant by name in

the latter part of the instruction constituted a statement of fact by the trial judge. The jury was plainly told in the first and second instructions granted to the State, and in the instructions granted to the defendant, that the defendant could be convicted only if the jury believed from the evidence beyond a reasonable doubt that the defendant killed the deceased by culpable negligence as defined in the instructions. The instruction complained of did not single out and direct the attention of the jury to any stated facts, as was done in the instruction complained of in the case of McKinney v. State, 196 Miss. 826, 18 So. (2d) 446, which has been cited by the appellant in his brief.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.