JONES *v.* STATE

No. 42267 October 15, 1962 145 So. 2d 446

*W. W. Dent, Joe Hawkins, D. A. McLeod,* Collins, for appellant.

598

*G. Garland Lyell, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

KYLE, J.

The appellant, Allen Jones, was indicted, tried and convicted in the Circuit Court of Smith County of the crime of manslaughter by culpable negligence in the operation of an automobile, and from the judgment of the court sentencing him to serve a maximum term of 20 years in the Mississippi State Penitentiary he prosecutes this appeal.

The record shows that one Deavours Grissom was fatally injured on July 30, 1961, when a Ford automobile owned and operated by the appellant, Allen Jones, collided with a Ford tractor, to which was attached a mowing device known as a bush hog, and which was being driven by Grissom, along State Highway No. 28. Both vehicles, at the time of the accident, were proceeding eastwardly along the right-hand or south traffic lane of said highway. The accident occurred about a quarter of a mile east of the corporate limits of the Town of Taylorsville sometime after 5 o'clock P.M. The tractor bush hog combination was struck from the rear and turned over and came to rest on the edge of the highway embankment. Grissom's body was under the tractor face down when it came to rest. There is no medical testimony to show the nature of his injuries, but the record shows that he died the next day as a result of his injuries.

Several witnesses, including two state highway patrolmen who arrived at the scene of the accident a few minutes after the accident occurred, testified as witnesses for the State.

Patrolman Wayne Vallentine, Jr., testified that the 1951 Ford car had come to a stop on the edge of the embankment along the left side of the highway. The

tractor was turned over on the right side of the highway and was headed in the same direction. The bush hog mower was still attached to the rear end of the tractor. Pictures were taken of the wrecked vehicles. Deavours Grissom, the driver of the tractor, was lying face down under the tractor. From the location of the debris it appeared that the collision had occurred in the right lane of traffic going eastwardly. The distance from the debris to the point where the tractor was located was 45 feet, to the point where the Ford automobile was located, 189 feet. There were no skidmarks on the pavement. There was some blood near the tractor.

Patrolman Jack De Poyster testified that the appellant and George Duckworth were at the scene of the accident when he arrived. He found the appellant in the custody of Grady Russell, a justice of the peace. The appellant was in a drunken condition, "a little unsteady on his feet", and the patrolman smelled the odor of alcohol. The front end of the automobile was badly damaged with the exception of the left fender. The rear end of the bush hog was also damaged. De Poyster testified that the appellant stated to him that he was driving the automobile, but the appellant was unable to give any information as to the speed of the automobile. The appellant stated that he did not know what happened.

Grady Russell, justice of the peace, testified that he arrived at the scene of the accident about 15 minutes after it occurred. Mr. Grissom's body had not been moved, it was lying beside the road. Blood was oozing out of his ears. He talked to Allen Jones who was standing beside his automobile. Allen told him that he did not know what happened. He told him that he was driving his car, and that he thought a big truck had hit him and knocked him off the highway. Allen was drinking, one could smell liquor on him; but no liquor was found in his automobile. George Duckworth was

lying on the grass by the side of the car and seemed to be asleep. The justice of the peace searched him and put both Allen and Duckworth under arrest. Allen told him that Roy Kennedy was in the car with them at the time of the wreck. Kennedy was arrested by the sheriff the next morning. Duckworth and Kennedy paid fines for public drunkenness.

Several other witnesses who appeared on the scene a short time after the wreck corroborated the statements of the justice of the peace and the highway patrolmen to the effect that the appellant and his two companions were drunk at the time they arrived at the scene of the accident.

The appellant Allen Jones testified that he was 73 years of age. He denied that he had drunk any intoxicating liquor during the day the accident occurred. He stated that he left Taylorsville in the late afternoon to go to his home which was a short distance east of the town. Roy Kennedy, who lived close by, got in the car to go home with him. George Duckworth was also in the car with him. Roy Kennedy drove the car to a gasoline service station and got some gasoline, and Roy was driving the car at the time of the wreck. The car was being driven at a rate of speed of 35 or 40 miles an hour. The appellant stated that he was knocked ''plum crazy'' when the car collided with the tractor bush hog combination. He did not remember seeing Mr. Russell or the highway patrolmen at the scene of the accident. It was about a week after he was placed in jail before he came to his senses. The appellant denied that the car was being driven at an excessive rate of speed. Five other witnesses testified on behalf of the appellant. Charlie Evans testified that he saw the appellant at the Gulf Filling Station in the Town of Taylorsville between 4 and 5 o'clock. Roy Kennedy and George Duckworth were with him. Roy Kennedy was driving the car. Roy bought a dollar's worth of gas-

oline and paid for it, Roy was driving when the car left the filling station. John Wesley Mayfield testified that he saw the appellant as he was leaving the Town of Taylorsville during the late afternoon, and that the car in which he was riding was being driven by Roy Kennedy. Medical Duckworth testified that he saw the appellant between 4 and 5 o'clock as he was coming out of town; that he was in his car sitting on the off side and was not driving the car himself.

The appellant's attorney has assigned and argued two main points as grounds for reversal of the judgment of the lower court: (1) That the court erred in refusing to grant the appellant's requested instruction for a directed verdict at the conclusion of all of the evidence; and (2) that the court erred in granting two instructions for the State and in refusing to grant two instructions requested by the appellant.

■■■ We think there was no error in the court's refusal to grant the peremptory instruction requested by the appellant. The judgment of the lower court, however, must be reversed and a new trial granted on account of the errors committed in the granting of the two instructions which appear on pages 5 and 6 of the record. Those instructions are as follows:

"The Court instructs the jury for the State of Mississippi that the operation of a motor vehicle by an intoxicated driver is inherently dangerous, involving negligence in its performance and is expressly prohibited by law, and hence violation of law constitutes unlawful act that in performance of which, if act causes death of another person constitutes manslaughter under the law, and if you believe from the evidence in this case beyond a reasonable doubt that the defendant Allen Jones was operating his automobile while in an intoxicated condition in violation of law, and caused the death of Deavours Grissom as a result, then under the law he is guilty of manslaugh-

ter and it is your sworn duty to bring in a verdict of guilty as charged.''

''The Court instructs the jury for the State of Mississippi that if you believe beyond a reasonable doubt from the evidence in this case that the death of Deavours Grissom was caused by a collision between a car and a tractor caused by defendant's intoxication, and if you further believe beyond a reasonable doubt from the evidence in this case that the defendant Allen Jones was operating his automobile upon the public highway while under the influence of intoxicating liquor, and as a result caused the death of Deavours Grissom, then in that event the defendant is guilty of manslaughter and it is your sworn duty to bring in a verdict of guilty as charged.''

 The indictment was in the statutory form of manslaughter charging that the defendant, Allen Jones, ''* * * unlawfully and feloniously did kill and slay one Deavours Grissom, a human being * * *.'' This was sufficient. Section 2454, Code of 1942, Rec.; Bradford v. State, 158 Miss. 210, 127 So. 277; Cutshall v. State, 191 Miss. 764, 4 So. 2d 289. The prosecution was conducted under Section 2232, Code of 1942, Rec., which is as follows: ''Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this chapter, shall be manslaughter.'' Culpable negligence was at once the basis of the prosecution and the gauge as to the evidence. Cutshall v. State, supra.

In Cutshall v. State, supra, the Court had under consideration an instruction similar to the two instructions mentioned above, and the court reversed the judgment of the lower court in that case because of the error in granting such instruction. In its opinion in that case the Court said: ''The driving of a vehicle by one who is under the influence of intoxicating liquor is a misdemeanor. Sec. 49, Ch. 200, Laws 1938. The driving of

an automobile while in this condition is therefore per
se negligence. Williams v. State, 161 Miss. 406, 137
So. 106. But this does not mean that such evidence
constitutes a prima facie case of manslaughter. See
Wilson v. State, 173 Miss. 372, 161 So. 744; Wells v.
State, 162 Miss. 617, 139 So. 859; State v. Thomlinson,
209 Iowa 555, 228 N.W. 80; State v. Clark, 196 Iowa
1134, 196 N.W. 82; People v. Wardell, 291 Mich. 276,
289 N. W. 328. * * * Although a jury may find that
the conduct of the operator constitutes gross neg-
ligence, the violation of the statute is not culpable neg-
ligence per se within the definition of Section 1002.
State v. Campbell, 82 Conn. 671, 74 A. 927, 135 Am.
St. Rep. 293, 18 Ann. Cas. 236; People v. Falkovith,
280 Ill. 321, 117 N.E. 398, Ann. Cas. 1918B, 1077; State
v. Clark, 196 Iowa 1134, 196 N.W. 82; Crisp v. State,
21 Ala. App. 449, 109 So. 282.'' In commenting further
on the above mentioned instruction, the Court said: ''It
is much as if the Court had charged that 'if the de-
fendant was guilty of culpable negligence, as defined,
you may so find, and as a further reason for conviction
you may take into account that he was, in any event,
guilty of drunken driving.' The vice of the instruction
consists in emphasizing intoxication as constituting de-
fendant a criminal rather than in appraising the con-
duct as negligence, and thereby overloading the defend-
ant with a mere abstraction to his prejudice. * * * One
who is guilty of driving while under the influence of
intoxicating liquor may be deprived of his right to drive
upon the highways but not of his right to a fair and
impartial trial under due process.''

In the Cutshall case the Court made it clear that, in
a case of this kind, instructions granted to the State
must not so characterize the crime of driving while
under the influence of intoxicating liquor as to place
the jury in the position of finding the defendant guilty
of manslaughter merely because he was guilty of a sep-

arate and lesser offense of driving while under the influence of intoxicating liquor.

The Attorney General in his brief makes reference to the opinion rendered by this Court in the Cutshall case and indicates his awareness of the fact that a conviction might be had under the indictment and the wording of the above mentioned instructions merely because the appellant was driving while under the influence of intoxicating liquor at the time of the collision. But it is argued that, when the two instructions are considered along with another instruction given to the appellant which appears on page 19 of the record, in which the jury was told that, it was their sworn duty to acquit the defendant "unless the State has proven from the evidence beyond all reasonable doubt that the car and the tractor collided as a result of such reckless negligence on the part of the defendant as to evince a wanton, reckless, and conscious disregard for the safety of human life or such an indifference to the consequences of his acts under the surrounding circumstances as to render his conduct equal to wilfullness," it may be reasonably assumed that the jury was not misled by the two instructions complained of. It is also argued that, if there was error in the granting of the two instructions, such error, under Rule 11 of the Court, should not work a reversal of the judgment in the light of the other instructions.

But the vice of the instructions complained of, as stated in the Cutshall case, consists of "emphasizing intoxication as constituting defendant a criminal rather than in appraising the conduct as negligence and thereby overloading the defendant with a mere abstraction to his prejudice." It was incumbent upon the State to prove beyond a reasonable doubt that the act of the defendant was unlawful and felonious; that is to say, "that he was guilty of such gross negligence on the occasion complained of as to evince on his part a wanton

or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfullness.'' Smith v. State, 197 Miss. 802, 20 So. 2d 701. From the language used in the above mentioned instructions the jury may well have concluded that mere proof of operating his automobile while in an intoxicated condition in violation of the law was sufficient proof in itself to evince on the part of the appellant ''a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness.'' The prejudicial nature of the two instructions complained of is apparent from a reading of the instructions, and the harm resulting from the giving of the instructions was not neutralized by the giving of the instruction which appears on page 19 of the record.

It is also argued on behalf of the appellant that the Court erred in refusing to grant two instructions requested by the appellant which appear on pages 20 and 21 of the record. But we think the two instructions in the form requested were properly refused. The two instructions were apparently requested to counterbalance the effects of the two instructions granted to the State which we have condemned above.

Other errors have been assigned and argued by the appellant's attorney. But in view of the fact that a new trial is to be granted, it is not necessary that we consider the remaining points argued in the appellant's brief.

For the reasons stated above the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J., and Gillespie, McElroy and Jones, JJ.,* concur.