427 So.2d 1363 (1983)
Buzel GRAY, Jr.
v.
STATE of Mississippi.
No. 53525.
Supreme Court of Mississippi.
January 14, 1983.
Rehearing Denied March 30, 1983.
*1364 Lee Calvin Buckley, Holly Springs, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROY NOBLE LEE, Justice, for the Court:
Buzel Gray, Jr. was indicted, tried and convicted in the Circuit Court of Union County, Honorable W.W. Brown, presiding, on a charge of aggravated assault and was sentenced to a term of twelve (12) years in custody of the Mississippi Department of Corrections, with four (4) years suspended. Gray has appealed and assigns nine (9) errors in the trial below.
On February 1, 1981, Sammy Owens and family, comprised of Mrs. Barbara Owens, his wife, and Suzanne and Jody, their children, were en route to church at approximately 6:00 p.m. They were traveling south on Mississippi Highway 15, which was a two-lane highway, at approximately 35 miles per hour. Rain had been falling, and darkness was approaching. As they passed Daniels High School, a northbound automobile driven by appellant suddenly crossed the centerline and hit the Owens car headon. Mr. Owens attempted to pull right and did everything he could to avoid the collision, but was unable to prevent it. Mrs. Owens sustained injuries consisting of three front teeth knocked out, two broken bones in the right ankle, broken nose, broken jawbone and lacerations of the head. Suzanne Owens was in a coma upon arrival at the hospital and indicated signs of brain damage. The attending physician did not think she would survive the injuries. However, she improved and has recovered to a large extent, except that she still has brain damage which results in double vision.
According to Curtis Robbins, he was following the Owens vehicle by approximately three (3) car lengths, and he witnessed the collision. His testimony corroborated that of Owens to the effect that appellant's vehicle crossed the centerline and struck the Owens vehicle in its proper lane of traffic.
Dwight Wood testified that he was driving south on Highway 15 a short distance ahead of Owens, that he met appellant and had to swerve off the west edge of the highway in order to prevent being struck by appellant's automobile, which was proceeding north in Wood's lane of traffic.
R.W. Davis, a New Albany police officer, responded to the accident, and, upon arrival at the scene, found the appellant's automobile across the centerline with the front portion in the southbound lane. The Owens vehicle was partially off the highway with the front end still on the pavement. Appellant was leaning against the passenger side of his automobile holding to the top and Officer Davis could smell alcohol on and *1365 around him. Appellant said that he had been drinking beer. He was taken to the hospital where a cut was sutured. Dr. James Thornton smelled alcohol on him and noted that he was "poorly coordinated." An intoxilizer test was administered to appellant and indicated that his blood alcohol level was .20%.

I.
Did the lower court err in overruling a demurrer to the indictment?
Appellant contends that the indictment for aggravated assault was fatal because it failed to charge an offense under, and as contemplated by, Mississippi Code Annotated & 97-3-7(2) (Supp. 1981). That section provides:
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years. Provided, however, a person convicted of aggravated assault upon a law enforcement officer or fireman while such law enforcement officer or fireman is acting within the scope of his duty and office shall be punished by a fine of not more than five thousand dollars ($5,000.00) or by imprisonment for not more than thirty (30) years, or both.
The only other statute[1] which pertains to recklessly or culpably negligently operating a motor vehicle is the reckless driving statute, Mississippi Code Annotated § 63-3-1201 (1972), which follows:
Any person who drives any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving.
Every person convicted of reckless driving shall be punished upon a first conviction by a fine of not less than $5.00 nor more than $100.00, and on a second or subsequent convictions he may be punished by imprisonment for not more than ten days or by a fine of not exceeding $500.00, or by both.
The reckless driving statute and the aggravated assault statute are separate violations. The reckless driving statute makes it an offense to drive any vehicle in a manner which indicates a willful or wanton disregard for the safety of persons and does not provide a penalty (violation) for injury inflicted upon a person. It is separate and distinct from the aggravated assault statute which provides for an attempt to cause serious bodily injury or causes such injury.
The indictment in the present case charged:
Buzel Gray, Jr... . unlawfully, willfully, and feloniously did cause serious bodily injuries to Sammy Owens, Barbara Owens, and Suzanne Owens, recklessly under the circumstances manifesting extreme indifference to the value of human life....
Although indictments have been returned for aggravated assault under our statute, this is the first case for decision as to whether or not the statute is violated by the use of an automobile. Other jurisdictions, with similar statutes, hold that aggravated assault statutes may be violated by the reckless or wanton operation of a motor vehicle which results in injury to a person.
In Blott v. State, 588 S.W.2d 588 (Tex. Crim. App. 1979), Blott was charged with aggravated assault in that he recklessly was driving over the speed limit on the wrong side of the road, which resulted in injury to other persons. The proof sustained the charge in the indictment and further indicated that persons who assisted the appellant at the time of the accident smelled the strong odor of alcohol about his person. *1366 The Texas court, in affirming the conviction for aggravated assault, said there was sufficient evidence from which a reasonable jury could have found that appellant's conduct was of the type denounced by Texas's aggravated assault statute.
In Harmon v. State, 260 Ark. 665, 543 S.W.2d 43 (1976), the appellant was prosecuted for driving his automobile in such manner that it left the road, entered a three-foot-deep ditch and struck a 13-year-old boy who was playing in the ditch, resulting in a fractured leg, fractured toe and bruises to the child. The pertinent part of the Arkansas aggravated assault statute provides: "(d) he recklessly causes serious physical injury to another person by means of a deadly weapon." Ark.Stat.Ann. § 41-1602(1)(d).
The appellant contended that the provisions of the statute are patently vague and overbroad, resulting in inadequate guidance to the person prosecuted, and insufficient guidance to a jury for application of the law to the facts.
The Arkansas Supreme Court rejected that contention and affirmed the conviction. The court noted that witnesses smelled the odor of alcohol on appellant immediately after the accident and the arresting officer testified that appellant "was in a kind of a stupor at the time of his arrest after he had left the scene."
The Arkansas aggravated assault statute defined a "deadly weapon" as follows:
(3) "Deadly weapon" means:
* * * * * *
(b) anything that in the manner of its use or intended use is capable of causing death or serious physical injury. [Ark.Stat.Ann. § 41-115(4)(b)].
Subsection (a) of Mississippi Code Annotated § 97-3-7(2) (Supp. 1981) does not define or limit the means by which a person causes, or attempts to cause, injury to another, and, in our opinion, is not as restrictive as statutes of some other jurisdictions.
Lott v. State, 92 Okl.Cr. 324, 223 P.2d 147 (1950) involved consideration by the Oklahoma Court of Criminal Appeals of facts involved in an automobile collision as applied to the Oklahoma aggravated assault statute. That statute, 1870 O.S. 1931, Tit. 21 O.S.A. § 645, provided that every person who, with the intent to do bodily harm, and without justifiable or excusable cause, commits any assault upon the person of another with any sharp or dangerous weapon, or who without such cause, shoots or attempts to shoot another with any kind of firearm or air gun or other means whatever, with intent to injure any person although without intent to kill such person, or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five (5) years, or by imprisonment in a county jail not exceeding one (1) year.
The undisputed facts of the case disclose that appellant drove his vehicle along the main street in the City of Pawhuska, Oklahoma, at a high and reckless rate of speed and that he collided with another vehicle resulting in serious injuries to several persons. The evidence also was conclusive that the appellant was drunk at the time. There was no evidence that appellant had an actual and conscious intent to collide his vehicle with the other automobile. The Court, citing Lamb v. State, 70 Okl.Cr. 236, 105 P.2d 799 (1940), said:
Where the intent with which an offense is committed is an essential element of such offense, the operating of an automobile by a person charged with an offense in a manner forbidden by law takes the place of and supplies the unlawful intent. It then becomes a question of fact whether or not defendant at the time was guilty of "culpable negligence" in operating an automobile upon the highway in violation of the law. 223 P.2d at 151.
The decision of the lower court was affirmed.
The Mississippi culpable negligence statute, Mississippi Code Annotated § 97-3-47 (1972), states:
Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.
*1367 The degree of negligence required to sustain a conviction under the above statute is equivalent to that required under the Mississippi aggravated assault statute. In Nelson v. State, 361 So.2d 343 (Miss. 1978), Nelson pointed a pistol at a friend, thinking it to be unloaded. The pistol discharged and wounded the victim, Willie C. Green. In discussing culpable negligence as applied to the aggravated assault statute, the Court said:
The facts of this case require us to define the acts proscribed by the statute and which constitute aggravated assault. The statute provides:
A person is guilty of aggravated assault if he . .. causes such injury ... recklessly under circumstances manifesting extreme indifference to the value of human life.
We hold these words are analogous to our definition of culpable negligence in homicide cases set forth in Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945) as follows:
[C]ulpable negligence should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the willful [sic] creation of an unreasonable risk thereof. (197 Miss. at 817, 20 So.2d at 705).
[361 So.2d at 344].
As far back as 1932, this Court discussed whether or not the assault and battery statute applied to injury as a result of culpable negligence. Woodward v. State, 164 Miss. 468, 144 So. 895 (1933). There, Woodward's truck was stopped in the middle of a rural road and an automobile driven by Brown attempted to pass around the truck and became stalled in a ditch. Mrs. Brown was standing outside the automobile when Woodward attempted to back up his truck and struck Mrs. Brown knocking her against the automobile and seriously injuring her. Woodward was indicted, the indictment charging that he did unlawfully and willfully commit an assault and battery on the person of Mrs. Corrinne Brown by then and there unlawfully and recklessly driving a motor vehicle against the person of the said Mrs. Corrinne Brown. The Court said:
An assault and battery may be committed with a motor vehicle by striking a person, or a vehicle in which he is riding, either intentionally or by driving so negligently as to constitute a reckless disregard of human life and safety. 42 C.J., p. 1315 sec. 1250.
* * * * * *
From these facts the jury could have believed that his act in turning the car upon Mrs. Brown was with deliberate intent, or it could be said that his act in starting and turning his motor vehicle toward and against her evinced such willful, reckless, and wanton disregard for her safety as to impute to him the willful intent to do the act. This is reinforced by the state's evidence that he had ample, open, and safe space in which to turn to his right; and, on the whole, the state's evidence shows that he intended the natural consequences of his act. From the state's view, he acted unlawfully and willfully, not because of anger or malice against Mrs. Brown, but in the view of doing an act calculated to injure, and which in fact did trespass upon her and injure her.
In the case at bar, if the jury believed the state's evidence that the defendant deliberatedly started his car in motion with Mrs. Brown standing in the road in front of his car, and without warning he drove the car against her, the jury was warranted in imputing to the appellant an intent to do her bodily harm. Under these facts the peremptory instruction was properly refused. [164 Miss. at 474, 475; 144 So. at 896].
See also Yazzie v. State, 366 So.2d 240 (Miss. 1979), where we held that the word "willful" is surplusage in an indictment for manslaughter by culpable negligence.
We agree with the Oklahoma Court in Lott v. State, supra, where it said:
It is not reasonable that it was the intention of the legislature that the culpable negligence rule should not apply in *1368 cases where the injuries failed to produce death, but might apply if death insued, although the defendant in the first class of cases might be more intoxicated, more reckless and have demonstrated the ultimate in culpable negligence, but by Divine providence the life of the victim was somehow spared. [223 P.2d at 151].
We are of the opinion that the lower court correctly overruled the demurrer to the indictment.

II.
Did the lower court err in admitting the testimony of Dwight Wood concerning a separate and remote incident?
Dwight Wood testified for the State that he was driving south on Highway 15; that he met the Thunderbird automobile, driven by appellant, approximately one-fourth (1/4) mile from the collision scene; and that he was required to drive off on the west side of the road in order to prevent a collision. He did not actually see the collision, but passed the scene a few minutes later and saw what had occurred. In Barrett v. Shirley, 231 Miss. 364, 95 So.2d 471 (1957), the Court said:
As a general rule where the speed of a vehicle is a factor in determining the proximate cause of a collision the evidence as to speed should be limited to the time of, or immediately before, the collision, and the court should exclude evidence of speed prior to and remote from the collision in question; but evidence of prior speed may be admitted if (1) the evidence shows that the vehicle continued to be operated at approximately the same speed until the collision occurs, or (2) where the circumstances are such, because of the nearness of the prior speed to the collision in point of time and distance or because of other factors, that the prior speed has substantial evidential value as to the speed of the vehicle at the time of, or immediately before, the collision. [231 Miss. at 373, 95 So.2d at 474].
A witness may not testify to the speed and to the manner in which a vehicle was driven at a point distant or remote from the scene of a collision. However, where he has seen the conduct of such a driver and follows the automobile to the scene of the collision, arriving within a few minutes thereafter, and there has been no time for change in the manner of driving, his testimony has been held relevant and competent. Such was the situation in Baxter v. Rounsaville, 193 So.2d 735 (Miss. 1967), where the witnesses were permitted to testify about the speed of an automobile one-quarter (1/4) mile from the accident and then followed such automobile to the scene.
Testimony of Owens and Robbins indicated the manner of appellant's driving at the scene of the collision and for a distance south of the scene and the testimony of Woods showed the same one-fourth mile distance away from the scene and for a distance toward the scene. We are of the opinion that the trial judge did not abuse his discretion in admitting the Woods testimony in evidence.

III.-V.
Did the lower court err in refusing to grant appellant's motion for a directed verdict and request for a peremptory instruction of acquittal?
Was the verdict of the jury contrary to the weight of the evidence?
Did the lower court err in overruling appellant's motion for judgment notwithstanding the verdict?
The appellant again argues that the State's case was presented on two theories: (1) that the conduct of appellant was intentional, (2) that the collision resulted from culpable negligence, and (3) that the evidence does not sustain the indictment.
We are of the opinion that when all the evidence for the State is taken as true, together with inferences flowing therefrom, and all evidence of the defendant in conflict therewith is disregarded (appellant introduced no evidence except a meteorologist who testified as to the rainfall), such evidence is sufficient to present a guilt question for the jury, the motion for directed *1369 verdict, request for peremptory instruction and motions for judgment notwithstanding the verdict or new trial were properly denied. Warn v. State, 349 So.2d 1055 (Miss. 1977).

VI.-VIII.
Did the lower court err in granting Instructions S-1A for the State, and in refusing Instructions D-2 and D-6 for the appellant?
The instructions follow:
Instruction S-1A
The Defendant, Buzel Gray, Jr., has been charged by an indictment with the crime of aggravated assault for having recklessly, seriously, injured Sammy Owens, Barbara Owens and Suzanne Owens under the circumstances manifesting extreme indifference to the value of human life.
If you find from the evidence in this case beyond every reasonable doubt that the Defendant, Buzel Gray, Jr., seriously injured Sammy Owens or Barbara Owens or Suzanne Owens recklessly by driving his automobile while intoxicated and sleepy, upon a wet roadway surface in rain or mist and crossing a yellow line into the lane of traffic reserved for the Owens' automobile thereby causing said injury and such action was under circumstances manifesting extreme indifference of the value of human life or serious bodily injury to the extent or degree of recklessness so gross as to be tantamount to a wanton disregard of, or either indifference to, the safety of human life, then you shall find the Defendant, Buzel Gray, Jr., guilty of aggravated assault, in which event the form of your verdict shall be, to-wit:
"We, the Jury, find the Defendant Buzel Gray, Jr., guilty of aggravated assault."
writing your verdict on a separate sheet of paper furnished you by the Court for that purpose.
Instruction D-2
The Court instructs the jury that it is not enough for the State of Mississippi to simply refer to the elements of an offense, but rather the State must: (1) establish the alleged acts which constitute the crime charged, and (2) define each of the acts on which it bases the charged offense.
If you find that the State had failed to prove beyond every reasonable doubt and every element of the offense charged or if the State fails to define the acts which constitute the offense, then, it is your sworn duty to find the defendant, Buzel Gray, Jr., not guilty.
Instruction D-6
The Court instructs the jury that proof that Buzel Gray, Jr. was driving while intoxicated is not per se culpable negligence or negligence of the degree required to establish the charge of aggravated assault.
Instruction S-1A stated the crime with which appellant was charged and then instructed the jury that, if it believed beyond reasonable doubt appellant drove his automobile in the manner enumerated in the instruction, and that, if the jury believed beyond reasonable doubt such manner of driving manifested extreme indifference to the value of human life, then the appellant should be found guilty. That instruction followed the proof introduced by the State in four (4) factual instances and correctly submitted the issues to the jury.
Instruction D-2 required the jury to (1) establish the alleged acts which constitute the crime charged, and (2) define each of the acts on which it based the charged offense. The first element was stated in Instruction S-1A. The lower court properly did not attempt to define each of the four acts of negligence stated in the instruction and D-2 was correctly refused.
Instruction D-6 attempted to have the court pick out one of the four facts in evidence and comment upon it and was correctly refused.
*1370 Appellant relies upon Mabry v. State, 248 Miss. 149, 158 So.2d 688 (1963) and Cutshall v. State, 191 Miss. 764, 4 So.2d 289 (1941), in his contentions here. However, Mabry was reversed because the instruction there did not set out any of the facts constituting the crime but referred the jury to the indictment to determine from it whether or not Mabry was guilty of the charge. Cutshall simply stated the law, which is elemental to the effect that a person may not be convicted of manslaughter by culpable negligence just because he is intoxicated. The intoxication must be a proximate contributing cause to the collision.
After a careful examination of all the instructions, including D-1 and D-4, given at the request of appellant, we are of the opinion that the jury was properly instructed in the case.

IX.
Did the lower court err in refusing to grant a mistrial because of the improper argument of the district attorney?
In his closing argument, the district attorney made statements to the effect that the State did not have a burden to prove appellant guilty beyond all reasonable doubt and every reasonable doubt. The district attorney evidently was attempting to draw a distinction between "beyond all reasonable doubt" and "beyond a doubt." In Edge v. State, 393 So.2d 1337 (Miss. 1981), the county attorney told the jurors "The law does not require you to know this man is guilty. All you have to do is believe it beyond a reasonable doubt." [393 So.2d at 1340]. This Court cited Clemons v. State, 320 So.2d 368 (Miss. 1975), where some of the remarks were held to be reversible error.
While district attorneys should be careful in making such a comparison because in the heat of trial and argument, they may easily put the court in error, we have considered the entire argument of the district attorney, and are of the opinion that the remarks do not constitute reversible error on the facts of this case.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG, P.J., and BROOM and PRATHER, JJ., concur.
WALKER, P.J., and DAN M. LEE, HAWKINS and BOWLING, JJ., dissent.
WALKER, Presiding Justice, dissenting:
I feel compelled to dissent from the opinion of the majority which has the effect of changing what has heretofore been a traffic violation and/or civil matter into a felony, the conviction of which carries a possible twenty-year sentence to the penitentiary. In my opinion, it was never the intention of the legislature that our aggravated assault law (Mississippi Code Annotated section 97-3-7(2)) which became effective July 1, 1974 was to be applied to the negligent operation of a motor vehicle.
The aggravated assault statute was designed to punish persons who inflict harm upon others by criminal means, such as with a deadly weapon or in some manner arising out of criminal violence.
Criminal laws which are classified as felonies should be reserved for crimes "intentionally" committed and not to the reckless driving of an automobile which results in injury to another. It is inevitable that citizens of this State who are dependent upon an automobile and who never intentionally did anything wrong in their lives or had a harmful thought toward their fellowman, will be trapped by this decision because of the alleged reckless operation of a motor vehicle as defined by the statute and put to the great expense of defending themselves in criminal court and possibly branded forever as a criminal. The little old lady who drives an automobile, the local grocer, members of the ministry, college students, and neighbors, none of whom have ever had a criminal thought will be subject to being charged under this decision with the felony of aggravated assault, when, on some occasion, they are driving too fast and are involved in an accident resulting in injury to some other person.
*1371 Also, it is inevitable that some people licensed by the State to practice their professions will, upon conviction, have their license revoked for the reckless operation of a motor vehicle which results in injury to another. In addition, public officials who find themselves caught up in this decision and convicted will be removed from office. In my opinion, laws governing the operation of motor vehicles should be covered by special statutes with appropriate penalties, less than a felony.
I am strongly in favor of stiff penalties and sanctions for driving while intoxicated. However, the aggravated assault statute does not require that a person be drinking in order to be charged under it. A person could be charged with aggravated assault under section 97-3-7(2) who has never taken a drink of intoxicants in his life.
I respectfully hope that the legislature will amend the statute to make it clear that it does not apply to the operation of a motor vehicle. If that is not done, we will have a whole new breed of criminals created by the majority's interpretation of section 97-3-7 and unfortunately these persons will not be the ones who the legislature intended to punish.
BOWLING and DAN M. LEE, JJ., join this dissent.
DAN M. LEE, Justice, dissenting:
I am unable to concur with the majority as to the refusal of instruction D-6 and therefore respectfully dissent. In Woodward v. State, 164 Miss. 468, 144 So. 895 (1932), involving an assault and battery conviction which arose out of the unlawful and reckless driving of a motor vehicle, this Court stated:
Intent is a necessary element of assault and battery, and the decisions of this court in the manslaughter cases, supra, are not in point in the case at bar.
"An assault and battery is the unlawful touching of another by the aggressor himself or by any other substance put in motion by him." 5 C.J., p. 718, sec. 74.
An assault and battery may be committed with a motor vehicle by striking a person, or a vehicle in which he is riding, either intentionally or by driving so negligently as to constitute a reckless disregard of human life and safety. 42 C.J., p. 1315, sec. 1250.
Of course, mere negligence would not impute an intent. If negligence be relied on, then it must amount to reckless, willful, and wanton disregard of the rights of others, in which state of case the intent is imputed to the accused. 42 C.J., p. 1315, sec. 1251.
(164 Miss. at 474-75, 144 So. at 896).
The past decisions of this Court clearly dictate that although the driving of an automobile while intoxicated constitutes negligence per se, such negligence alone does not rise to a degree of culpable negligence so as to sustain a conviction of manslaughter. Roberts v. State, 379 So.2d 514 (Miss. 1979); Gandy v. State, 373 So.2d 1042 (Miss. 1979); Frazier v. State, 289 So.2d 690 (Miss. 1974); and Cutshall v. State, 191 Miss. 764, 4 So.2d 289 (1941). Perhaps it is best stated in Gant v. State, 244 So.2d 18 (Miss. 1971), wherein this Court stated:
* * * "Experience has shown that under that statute (the culpable negligence statute) juries are overinclined to convict on proof of what is in fact no more than simple negligence, and as a result there have been more reversals in this class of cases than perhaps in any other that comes before us." * * *
([Ruffin v. State] 203 Miss. [1] at 3, 4, 32 So.2d [882] at 882)
We went on to say in Ruffin, supra:
* * * The most that can be made out of the present record, when conjectures are laid aside, is a case of negligence but not culpable negligence. (203 Miss. at 4, 32 So.2d at 882).
* * * * * *
This Court has on several occasions found it necessary to pass upon the culpable negligence issue growing out of the operation of a motor vehicle by a drunken driver, and we have said "mere intoxication" of the driver of an automobile at *1372 the time of an accident is not sufficient to sustain a conviction of manslaughter. Lee v. State, 192 Miss. 785, 7 So.2d 875 (1942); Smith v. State, supra.

We have held, however, that where the testimony shows that the defendant was weaving from side to side on the highway, and the highway patrolman testified that the defendant was the "drunkest" man he had ever seen driving a vehicle on the public road, and that he collided with another vehicle, the jury was warranted in finding the defendant guilty of manslaughter. Lester v. State, 209 Miss. 171, 46 So.2d 109 (1950).
On the other hand, we held in Jones v. State, 244 Miss. 596, 145 So.2d 446 (1962), that it was reversible error to instruct the jury that the mere proof of operating a motor vehicle in an intoxicated condition was not sufficient proof in itself to evince on the part of the defendant "a wanton or reckless disregard for the safety of human life, or of such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness."
An examination of the opinions in Lester and Jones, supra, clearly indicates that the State must show something more than the mere drinking of intoxicants on the part of the defendant in order to sustain a manslaughter conviction growing out of an accident where intoxication is sought to be shown as the cause for the accident. The State must show that the drinking of intoxicants was to such an extent so as to prevent the defendant from operating his automobile upon the highway in reasonably safe and careful manner and that the intoxication was the proximate cause of the death. Williams v. State, 161 Miss. 406, 137 So. 106 (1931)... .
* * * * * *
The judgment of the trial court will, therefore, be reversed and appellant, D.F. Gant, discharged from further prosecution herein.
(244 So.2d at 19-21)
Appellant requested the following instruction which was refused by the trial court:
The Court instructs the jury that proof that Buzel Gray, Jr. was driving while intoxicated is not per se culpable negligence or negligence of the degree required to establish the charge of aggravated assault.
In my opinion, this instruction was a clear statement of the law. The accident occurred on a slick highway during a heavy rainstorm and diminished visibility. Had appellant not been drinking, the case would have involved nothing more than simple negligence. However, because of appellant's intoxication, the case has been elevated to the criminal offense of aggravated assault and sentence of twelve years. The majority, by holding that this was properly refused, in effect overrules the previous decisions of this Court which hold that mere intoxication of a driver of an automobile at the time of an accident is not sufficient to sustain a conviction. Perhaps the majority should refrain from committing that most dreaded judicial sin called "judicial legislating" by reaching a strained interpretation of the aggravated assault statute, Mississippi Code Annotated section 97-3-7 (1972). This is particularly true in this case as the majority must overrule Cutshall, Gant, Frazier, Gandy, Roberts and Ramon v. State, [387 So.2d 745 (Miss. 1980)], in order to reach the result it has.
The state obtained the following instruction:
The Defendant, Buzel Gray, Jr., has been charged by an indictment with the crime of aggravated assault for having recklessly, seriously, injured Sammy Owens, Barbara Owens and Suzanne Owens under the circumstances manifesting extreme indifference to the value of human life.
If you find from the evidence in this case beyond every reasonable doubt that the Defendant, Buzel Gray, Jr., seriously injured Sammy Owens or Barbara Owens or Suzanne Owens recklessly by driving his automobile while intoxicated and *1373 sleepy, upon a wet roadway surface in rain or mist and crossing a yellow line into the lane of traffic reserved for the Owens' automobile thereby causing said injury and such action was under circumstances manifesting extreme indifference of the value of human life or serious bodily injury to the extent or degree of recklessness so gross as to be tantamount to a wanton disregard of, or either indifference to, the safety of human life, then you shall find the Defendant, Buzel Gray, Jr., guilty of aggravated assault, in which event the form of your verdict shall be, to-wit: "We, the Jury, find the Defendant Buzel Gray, Jr., guilty of aggravated assault." writing your verdict on a separate sheet of paper furnished you by the Court for that purpose.
After this instruction was granted the state, it became necessary to grant instruction D-6 in order that the jury could understand the difference between gross negligence and culpable negligence that amounted to willfulness. Culpable negligence is a lesser term than willful. Ramon, supra. The refusal of the proffered instruction allowed the jury to infer appellant's intent from the mere fact that he was intoxicated. In my opinion, this was error because it deprived appellant of his only defense. The case should be reversed and remanded for a new trial.
HAWKINS, J., joins this dissent.
HAWKINS, Justice, dissenting:
I join the dissent of Justice Dan Lee that the circuit court erred in refusing instruction D-6, which should have been given in some form in light of the instructions granted the state.
It is also my view the circuit court was in error in admitting the testimony of Dwight Wood. Wood did not see the accident, and the manner in which the defendant was driving a quarter of a mile from the scene may very well have had nothing to do with the way he was driving at the time of the accident, but its prejudice is beyond doubt.
I am in full agreement with the majority that the aggravated assault statute was properly applicable to the facts of this case.
NOTES
[1] Where death does not result.